**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION**

**GEORGE T. FREDRICK**                                                             **PLAINTIFF**

**V.**                                              **CASE NO. 2:11-CV-00224-MTP**

**JONES COUNTY BOARD OF SUPERVISORS, ET AL.**       **DEFENDANTS**

**OPINION AND ORDER**

Defendants David Hare, Brenda Tillman, Jessica Welborn, and Carroll Johnston seek summary judgment on the claims asserted against them in this 42 U.S.C. § 1983 action. They argue that they are immune from liability in this case and that a dismissal with prejudice should be entered. Plaintiff George T. Fredrick did not file a response to the motion or notify the Court of his intent not to respond. L.U. Civ. R. 7(b)(3)(A). Having considered the motion, case record, and applicable law, the Court finds that motion should be granted for the reasons discussed below.

I.       FACTS AND PROCEDURAL HISTORY

Plaintiff George T. Fredrick, proceeding *pro se* and *in forma pauperis*, originally filed his § 1983 complaint for civil damages in the Circuit Court for the Second Judicial District of Jones County, Mississippi, on July 25, 2011. Fredrick's claims arise from alleged constitutional violations he suffered while housed at Jones County Jail[1] on a grand larceny charge and on parole hold for the Mississippi Department of Corrections ("MDOC"). According to the MDOC website and the Plaintiff's notice of change of address, Fredrick is no longer incarcerated.

---

[1] Fredrick lists the Jail as "Jones County Adult Detention Center" in the state court complaint. Doc. [1-2] at 14. However, he lists the Jail as "Jones County Jail" in the amended complaint he filed in this Court. *See* Docs. [5-1][12].

The following defendants are named in the state court complaint: Jones County Board of Supervisors, Sheriff Alex Hodge, Captain David Hare, Sergeant Brenda Tillman, Sergeant Jessica Welborn, Nurse Carroll Johnston, Sergeant Greg Folks, Sergeant Cooksey, and Fernando Thigpen.[2] Process was served on all defendants except Folks, Cooksey, and Thigpen, who could not be found in Jones County.[3] The properly served defendants removed the case to this Court on November 3, 2011, pursuant to 28 U.S.C. § 1441, asserting jurisdiction based on a federal question, 28 U.S.C. § 1331.

On December 27, 2011, the Plaintiff filed an amended complaint, removing Fernando Thigpen as a defendant and adding Jones County Sheriff's Department, Jones County Jail, and Jones County to the case. Docs. [5-1][12]. An omnibus hearing was held on October 12, 2012, at which time the Plaintiff summarized the basis of his claims against the Defendants. Fredrick claims that on April 26, 2011, Sergeant Folks transferred him to a cell populated by gang members who often fought White and Hispanic inmates. Fredrick asserts that once he was inside the cell, gang members harassed him and later that night, beat him to a state of unconsciousness. When a nurse came by the cell the following morning, April 27, 2011, Fredrick initially told her he had a seizure, but once outside the cell, he told her that he had been attacked. Fredrick was taken to Captain Hare's office. Captain Hare questioned Fredrick about the assault before

---

[2]In his state court complaint, Fredrick identifies Thigpen as another inmate at Jones County Jail. Doc. [1-2] at 15-16. Fredrick does not provide a first name for Sergeant Cooksey. The Plaintiff incorrectly identifies Sergeant Greg Fowlkes as "Sergeant Folks" in his complaint. *See* Docs. [1-2][36-2]. For consistency purposes, the Plaintiff's spelling will be used throughout this opinion.

[3]According to the state court docket, summonses were returned for Sergeant Folks, Sergeant Cooksey, and Fernando Thigpen on October 24, 2011, stating that these defendants could not be found in Jones County, Mississippi. Doc. [1-2] at 101-106. Although the complaint was filed on July 25, 2011, summonses were not issued as to the defendants until October 20, 2011. Doc. [1-2] at 83-100.

sending him to get medical attention.

On April 28, 2011, Fredrick was transported to South Central Regional Medical Center ("SCRMC") for a CT scan. He was admitted to SCRMC for surgery on April 29, 2011. The following day, Fredrick returned to Jones County Jail. The Plaintiff claims he could not to eat regular food after the surgery due to his jaw being broken. He asserts that Captain Hare refused to provide him with any special food, despite knowing his medical condition. A few weeks later, Fredrick was transferred from Jones County Jail to another facility.

As to his claims for relief, the Plaintiff asserts that Officer Folks failed to protect him by placing him in a cell with violent gang members who would likely attack him. Fredrick claims that Captain Hare is responsible for the delay in his medical treatment because he interviewed him about the attack instead of immediately sending him to get medical assistance. Fredrick asserts that Sergeant Jessica Welborn and Nurse Carroll Johnston caused him to suffer extreme pain by failing to properly administer and/ or deliver his medication as often as prescribed. He claims that Nurse Johnston also failed to provide him with a soft pillow for his broken jaw. The Plaintiff further alleges that Sergeant Brenda Tillman wrongfully charged $6.00 to his inmate account for Tylenol he received, although he was advised by a nurse at the jail that he would not be charged. Fredrick also asserts that he filed grievances regarding the issues in this case, but that Tillman, who was then an assistant to Captain Hare, failed to answer the complaints to his satisfaction. Fredrick seeks compensatory and punitive damages from the Defendants.

Also at the omnibus hearing, Fredrick agreed to dismiss his claims against the Jones County Board of Supervisors, Jones County Sheriff's Department, Jones County Jail, Jones County, and Sheriff Alex Hodge. The Court granted the Plaintiff's motion and dismissed them

from the case. Sergeant Folks apparently has not yet been served with process.[4]

At this time, Captain Hare, Sergeant Tillman, Sergeant Welborn, and Nurse Johnston move for summary judgment on the claims asserted against them in their individual capacity. *See* Motion [40]. The Defendants contend that they are entitled to qualified immunity and that, as such, the Plaintiff cannot establish a *prima facie* case of liability against them. By Order [43] dated August 8, 2013, the Court directed Fredrick to file a response or notify the Court of his intent not to respond on or before August 22, 2013. However, he did not respond to the motion or otherwise comply with the order.

Fifth Circuit precedent provides that an unopposed dispositive motion should not be granted unless there is a "clear record of delay or contumacious conduct." *Johnson v. Pettiford*, 442 F.3d 917, 919 (5th Cir. 2006). There is no such record in this case. Similarly, the local rules of this Court do not permit a dispositive motion to be granted merely because no opposition is filed. *See* L.U. Civ. R. 7(b)(3)(E). Accordingly, the Court will examine the merits of the Defendants' motion.

II.     LEGAL AUTHORITY

A.     Summary Judgment

Rule 56 (a) of the Federal Rules of Civil Procedure "mandates the entry of summary judgment...against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When ruling on a motion for summary judgment, the court must consider the record evidence and draw all reasonable

---

[4]The Defendants were ordered and directed to provide the Court with the last known address for Folks. *See* Doc. [33]. The Defendants complied with the order [36], but process was not reissued. Process will be reissued pursuant to a separate order.

inferences in the nonmoving party's favor.  *Paz v. Brush Engineered Materials, Inc*., 555 F.3d 383, 391 (5th Cir. 2009).

The party seeking summary judgment bears the burden of "informing the district court of the basis for its motion, and identifying those portions of [the record evidence] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex,* 477 U.S. at 323.  "A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Paz*, 555 F.3d at 391 (quoting *Crawford v. Formosa Plastics Corp*., 234 F.3d 899, 902 (5th Cir. 2000)).  Once the moving party meets its burden, the nonmoving party must then "come forward with specific facts showing a genuine factual issue for trial."  *Harris ex rel. Harris v. Pontotoc Cnty. Sch. Dist.*, 635 F.3d 685, 690 (5th Cir. 2011).

B.      Qualified Immunity

Under 42 U.S.C. § 1983, a state official acting "within the scope of [his or her] discretionary authority" is entitled to qualified immunity.  *Cronen v. Texas Dept. Human Svcs.*, 977 F.2d 934, 939 (5th Cir. 1992).  The doctrine of qualified immunity is an "*immunity from suit* rather than a mere defense to liability; and like absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."  *Mitchell v. Forsyth*, 427 U.S. 511, 526 (1985).  In determining whether an official is entitled to qualified immunity, the district court must decide whether the facts alleged by the plaintiff show that the defendant official violated a constitutional right and whether that right was clearly established at the time of the official's alleged misconduct.  *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009).  A court must enter judgment in favor of the official unless his or her conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known."  *Id.* at 231 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

A defense of qualified immunity alters the usual burden of proof in the context of summary judgment. *See Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (citing *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005)). Once an official pleads qualified immunity, the burden shifts to the plaintiff, who must then "rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Brown*, 623 F.3d at 253; *Michalik*, 422 F.3d at 262. The plaintiff must essentially show that no reasonable officer could have believed his actions were appropriate. *Babb v. Dorman,* 33 F.3d 472, 477 (5th Cir. 1994).

C.   Delay and/ or Denial of Medical Treatment

At the times alleged in this lawsuit, Fredrick was being held at Jones County Jail on a burglary charge and on parole hold for the MDOC. As such, it is unclear whether the Plaintiff was a pretrial detainee or post-conviction inmate when his claims arose. The rights of a pretrial detainee to medical treatment are protected under the Fourteenth Amendment, whereas those of a convicted prisoner are protected under the Eighth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L. Ed. 2d 447 (1979); *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L. Ed. 2d 251 (1976).

> As stated by the Fifth Circuit:
>
> Pretrial detainees and convicted prisoners...look to different constitutional provisions for their respective rights to...medical care and safety. The constitutional rights of a convicted state prisoner spring from the Eighth Amendment's prohibition on cruel and unusual punishment, and, with a relatively limited reach, from substantive due process. The constitutional rights of a pretrial detainee, on the other hand, flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment.

*Hare v. City of Corinth,* 74 F.3d 633, 639 (5th Cir. 1996) (internal citations omitted).

i.      Pretrial Detainees

"A denial of medical care by a pretrial detainee alleges a deprivation of due process under the Fourteenth Amendment." *Fields v. City of South Houston, Tex.,* 922 F.2d 1183, 1191 (5th Cir. 1991) (citing *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1186 (5th Cir.1990)).  The Fifth Circuit provides that a pretrial detainee has a "Fourteenth Amendment right not to be denied, by deliberate indifference, attention to his serious medical needs." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (citing *Hare v. City of Corinth,* 74 F.3d 633, 650 (5th Cir. 1996)).  An officer is deliberately indifferent, as defined in due process cases, if the officer has "subjective knowledge of a substantial risk of serious harm to a pretrial detainee" and he responds with "deliberate indifference to that risk." *Hare*, 74 F.3d at 650.

ii.     Post-Conviction Inmates

Similarly, a deliberate indifference standard is applied to a convicted prisoner's claim of delay of medical treatment.  To prevail on a delay or denial of medical care claim under § 1983, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs" because "only such indifference [] can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L. Ed. 2d 251 (1976).  "[A] prison official cannot be found liable under the Eighth Amendment...unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 829, 114 S.Ct. 1970, 128 L.Ed. 2d 811 (1970).  The official must have known that an inmate faced "a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it." *Id*. at 847.  If the risk is obvious, the official's knowledge of that risk may be inferred. *Id*. at 837; *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006).  "Further, delay in medical care can only constitute an Eighth

Amendment violation if there has been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

A prisoner's mere disagreement with medical treatment does not state a valid claim for deliberate indifference. *Castilla v. July*, 470 F. App'x 358, 359 (5th Cir. 2012) (citing *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997)). Rather, the prisoner-plaintiff must demonstrate that officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

III.   DISCUSSION

The Defendants argue that they are entitled to qualified immunity because the Plaintiff has not shown that he suffered a constitutional violation. The Court will evaluate the Plaintiff's claims and determine whether qualified immunity applies in this case and whether judgment should be entered in favor of the Defendants as a matter of law.

    i.   Captain Hare

Fredrick asserts that Captain Hare delayed him medical treatment by interviewing him about the assault rather than immediately sending him to get medical attention. Fredrick also alleges that Hare knew his jaw was broken, but refused to provide him with a soft food diet. In response to these claims, Captain Hare asserts that he interviewed Fredrick to find out who his attacker was and that any delay Fredrick may have had in his medical treatment was, at worst, brief. Hare claims he never knew Fredrick needed to be on a soft food diet.

The record shows that Nurse Johnston came to Fredrick's jail cell at approximately 9:00 a.m. on April 27, 2011, the morning after the attack, and found Fredrick in a severely bruised condition. Doc. [40-3] at 26. Fredrick was taken to Captain Hare's office for an interview and

evaluation between 9:15 and 9:30 a.m. that day. *Id.*; Hare Affidavit [40-4] at 2. During the interview, Fredrick told Captain Hare that another inmate, Fernando Thigpen, had attacked him the night before. Doc. [40-3] at 27. Fredrick prepared a written statement regarding the assault. *Id.* Nurse Johnston evaluated Fredrick in the office and, prior to 12:00 noon, Fredrick was taken to outside medical facilities for further evaluation and treatment. Hare Affidavit [40-4] at 2-3.

Based on the evidence in the record, Fredrick waited a maximum of approximately two and a half hours between the time he was brought to Captain Hare's office and taken to an outside facility. The Plaintiff has not shown he suffered a delay in medical treatment that amounts to a constitutional violation. He does not establish that Captain Hare was deliberately indifferent to his medical needs.

The following sequence occurred after Fredrick was taken to the office: Nurse Johnston evaluated him and it was determined that he needed further medical treatment. Before Fredrick could be taken to an outside medical facility, however, approval was needed for his transportation and outside medical care. Doc. [40-4] at 2. It is unclear how long it took for Hare to get approval for outside treatment. However, during the time he was in Hare's office, the Plaintiff was attended to by a nurse and interviewed regarding the incident.

Captain Hare testified by sworn affidavit that he needed to interview Fredrick so that charges could be brought, at Fredrick's request, against his attacker and so that the Jail could prevent future attacks by that inmate. Doc. [40-4] at 3. Hare also testified that he is unaware of any physician's order requiring the Plaintiff to receive a soft diet. Id. at 3.

Fredrick does not allege that he faced a substantial risk of serious harm by not immediately receiving medical treatment or by not being placed on any type of special diet. Likewise, he does not allege that Hare subjectively knew any such harm existed; that Hare failed

to take reasonable steps to prevent the harm; or that he otherwise acted with deliberate indifference to the Plaintiff's medical needs. *See Farmer*, 511 U.S. at 829; *Hare v. City of Corinth*, 74 F.3d at 650.  As such, Fredrick fails to establish a constitutional violation based on a delay in or denial of medical treatment.  Because the Plaintiff does not show he suffered a constitutional violation, qualified immunity applies to preclude Captain Hare from being held personally liable in this lawsuit.  Therefore, summary judgment as to this Defendant is appropriate.

      ii.      Nurse Johnston and Sergeant Welborn

The Plaintiff claims that Nurse Johnston and Sergeant Welborn violated his constitutional rights by failing to give him his pain medication as often as prescribed.  He further claims that Nurse Johnston refused to give him a soft pillow.  Although the Plaintiff alleges that Nurse Johnston and Sergeant Welborn denied him medical treatment, the record does not support this claim.

On April 27, 2011, Nurse Practitioner Donnie Scoggins ordered Fredrick to take one tablet of Tramadol every six hours as needed for pain.  Doc. [40-3] at 8.  Fredrick's prescription was for thirty tablets.  *Id*.  On April 30, 2011, Dr. Carl Stevens prescribed Hydroco for the Plaintiff's pain.  *Id*. at 10.  The prescription was for twenty tablets and Fredrick was ordered to take one to two tablets every four to six hours as needed for pain.  *Id*.  On May 5, 2011, the Plaintiff's prescription for Hydroco was refilled.  *Id*. at 9.  Fredrick was again given twenty tablets and ordered to take one to two tablets every four to six hours as needed for pain.  *Id*.

By sworn affidavit, Nurse Johnston testified that she emptied pill packets for all medication prescribed to the Plaintiff.  Doc. [40-5] at 2.  Nurse Johnston testified that Fredrick was provided Tramadol and Hydroco "per his complaints of pain, not in excess of the maximum

amount ordered." *Id*. She states that he requested and was given Tylenol for pain "once on May 9, 2011, twice on May 10, 2011, and once on May 13-15, 2011." *Id*. at 3. Nurse Johnston also testified that she was "not made aware of any further requests for pain medication by Fredrick after May 15, 2011." *Id*.

The record shows that the Plaintiff received his pain medications as prescribed and that he received over-the-counter medication for his complaints of pain. Based on this unchallenged evidence, the Plaintiff fails to show that he was denied medication and/ or medical treatment or that the Defendants were deliberately indifferent to his medical condition. Since the Plaintiff cannot show that Nurse Johnston or Sergeant Welborn refused to given him pain medication as prescribed, he does not have a valid claim for denial of medical treatment under the Eighth or Fourteenth Amendment. Therefore, Nurse Johnston and Sergeant Welborn are entitled to qualified immunity on the claims asserted against them in their individual capacity.

iii. Sergeant Tillman

Fredrick asserts that Sergeant Tillman improperly charged $6.00 to his inmate account for Tylenol that he requested and received for pain. Fredrick argues that another nurse at the Jail told him he would not be charged for the pills. However, to the extent he asserts he should have received free over-the-counter medication, the Plaintiff has not alleged a constitutional violation.

Fredrick also claims that Sergeant Tillman failed to properly respond to his grievances. During the omnibus hearing, the Plaintiff testified that he was unsatisfied with Sergeant Tillman's responses to the grievances he filed regarding the issues complained of in this case. Doc. [40-2] at 22-23. He claims that Tillman's response to one of his grievances addressed a matter other than the one he had complained about. *Id*. at 24. Fredrick asserts that she never responded to another of his grievances. *Id*. However, the Plaintiff has not submitted any proof

of having filed grievances related to the issues in this case.

Fredrick testified at the hearing that Tillman was as an administrative assistant to Captain Hare at the times alleged in this case and that Tillman was responsible for delivering Hare's responses to inmate grievances. *Id.* at 23. Based on this testimony, it appears that the Plaintiff is suing Tillman for responses that were issued by Hare. He does not allege that Tillman issued grievance responses to inmates. Fredrick does not provide a legal or factual basis upon which Sergeant Tillman should be held personally liable for violating his constitutional rights. Further, to the extent the Plaintiff asserts liability against Tillman for acts made by Captain Hare, he has not alleged a constitutional claim. Fredrick does not show that no reasonable officer could have believed Sergeant Tillman's actions were appropriate. *See Babb*, 33 F.3d at 477. Therefore, qualified immunity applies to shield Tillman from individual liability in this case.

### iv. Official Capacity Claims

Although unclear, it appears that the Plaintiff is suing the Defendants in their official capacities. However, a lawsuit against the Defendants in their official capacities is, in essence, a suit against Jones County. *See Monell v. New York City Dept. of Soc. Serv.,* 436 U.S. 658, 691 n. 55, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) (stating that a lawsuit suit against a local government employee is essentially an action against the entity where the officer is employed). For Jones County to be liable in this case under § 1983, Fredrick "must demonstrate that the allegedly constitutionally deficit offense is the policy or custom of the municipality." *Woodard v. Andrus*, 419 F.3d 348, 352 (5th Cir. 2005) (citing *Monell,* 436 U.S. at 690-91, 98 S. Ct. 2018, 56 L. Ed. 2d 611). That is, the Plaintiff must show: "(1) that the municipal employee violated [his] clearly established constitutional rights with subjective deliberate indifference; and (2) that this violation resulted from a municipal policy or custom adopted and maintained with objective deliberate

indifference." *Brumfield v. Hollins*, 551 F.3d 322, 331 (5th Cir. 2008) (quoting *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 528-29 (5th Cir. 1999)).

Fredrick does not allege that Jones County implemented a policy or custom that caused him to suffer a constitutional violation. As discussed above, the Plaintiff does not show that the Defendants violated his constitutional rights. Thus, the Plaintiff fails to meet his burden of proof with regard to municipal liability and, therefore, the Defendants cannot be held liable for the claims asserted against them in their official capacities. As such, summary judgment should be entered in favor of the Defendants as to the official capacity claims.

IV.    CONCLUSION

Based on the above analysis, the Court finds that the Defendants are entitled to qualified immunity and, therefore, cannot be held personally liable in this lawsuit. Moreover, the Defendants cannot be held liable in their official capacities because the Plaintiff does not show that an official Jones County policy was the "moving force" behind any alleged constitutional deprivation. *Brumfield,* 551 F.3d at 331. Therefore, the Defendants' Motion for Summary Judgment [40] is well taken and is hereby granted. A separate judgment will be entered pursuant to Fed. R. Civ. P. 59.

SO ORDERED, this the 11th day of September, 2013.

                                                /s/MICHAEL T. PARKER
                                                UNITED STATES MAGISTRATE JUDGE